Amy R. Atwood, *pro hac vice*
Center for Biological Diversity
P.O. Box 11374
Portland, Oregon 97211-0374
Tel: 503-283-5474
atwood@biologicaldiversity.org

Neil Levine, *pro hac vice*
Grand Canyon Trust
2539 Eliot Street
Denver, Colorado 80211
Tel: 303-455-0604
nlevine@grandcanyontrust.org

Roger Flynn, *pro hac vice*
Western Mining Action Project
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
Tel: 303-823-5738
wmap@igc.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, *et al.*, | Case No. 3:09-cv-08207-DGC |
| Plaintiffs, | PLAINTIFFS' MEMORANDUM IN SUPPORT OF DISCOVERY |
| vs. | |
| Salazar, *et al.*, | |
| Defendants, | |
| and | |
| Denison Arizona Strip, LLC, *et al.*, | |
| Intervenor-Defendants. | |

1

## INTRODUCTION

Pursuant to the Court's Orders dated April 12, 2010, June 17, 2010, and July 1, 2010, Plaintiffs submit this Memorandum to support conducting discovery of certain issues over Federal Defendants' unsupported objections. Plaintiffs seek limited discovery on the following specific issues: (1) BLM's affirmative jurisdictional defense alleging that Plaintiffs' Claim 2 does not challenge a final agency action, (2) the merits of Plaintiffs' Claim 2, which challenges BLM's failure to prepare a supplemental environmental review pursuant to the National Environmental Policy Act (NEPA), and (3) remedy, in particular, Plaintiffs' request for an injunction to halt all active mining operations at Arizona 1 pending BLM's compliance with NEPA and the Federal Land Policy and Management Act (FLPMA).

To ensure that this evidence is developed prudently and will permit a reasoned decision on the merits of Plaintiffs' claims and requested relief, Plaintiffs seek to propound an initial round of written discovery -- including Requests for Production, Requests for Admissions, and Interrogatories -- on Federal Defendants for all three of these issues, and on Defendant-Intervenors (Denison) for remedy issues, providing 30 days for responses. From the date of an order allowing discovery, Plaintiffs would also request up to two weeks to prepare written discovery requests before propounding the initial round of discovery on defendants and commencing the 30-day period for responses. Depending on the thoroughness of responses to this initial round, 45 days for a second round of written discovery may be necessary including, if appropriate, Depositions. Plaintiffs also request two weeks from the date when they receive defendants' responses to review the responses, determine whether a second round of discovery is necessary and if so, to prepare and serve such requests thereby commencing the 45-day period for responses.[1]

---

[1] Although Denison would allow discovery on the remedy issues, it seeks to bifurcate the proceedings to permit remedy-related discovery to proceed only after a liability determination. However, Plaintiffs contend that it will be a better use of resources and further the interests of judicial economy for all of Plaintiffs' discovery to proceed at the same time and in advance of summary judgment briefing, thereby obviating any need for additional rounds of discovery and briefing.

1

Plaintiffs have repeatedly identified these three areas for discovery, beginning with a detailed overview of their position in the parties' initial Case Management Report, Dkt. 33 at 7-11, and since then, have narrowed the issues for which they seek discovery in correspondence to defendants dated June 23, 2010 and July 16, 2010. *See* Exhs, 1, 2, Throughout the parties' communications regarding this discovery, however, Federal Defendants have simply repeated -- but have never explained or supported their position -- that Plaintiffs are not entitled to any discovery whatsoever, whether it be related to the merits of Plaintiffs' claims, defendants' jurisdictional defenses, or remedy. But as detailed below, Plaintiffs' proposed discovery is both relevant and warranted as a legal matter as well as necessary for full development of a factual basis for deciding, in summary judgment, an affirmative defense being pursued by BLM, Plaintiffs' Claim 2, and the proper scope of any injunctive relief to remedy BLM's violations of law. *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1082-1083 (9th Cir. 2003) (remanding appeal of summary judgment where "the record [wa]s not sufficient to ascertain" question of material fact with instructions to permit discovery on the that question)*; U.S. v. Stever*, 603 F.3d 747, 754 (9th Cir. 2010) (finding district court's denial of discovery an abuse of discretion).

## ARGUMENT

I. <u>Jurisdictional Discovery Is Relevant And Warranted</u>

BLM is defending against Claim 2 by arguing that Plaintiffs fail to challenge a final agency action under the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*. (APA) and the *Bennett v. Spear* two-part test. Dkt. 73 at 8 (BLM Answer); Dkt. 52 at 15 (BLM opposition brief); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (To be "final," an agency action "must mark the consummation of the agency's decision making process" and "be an action 'by which rights or obligations have been determined, or from which legal consequences will flow.'") (internal quotation marks omitted). Fed. R. Civ. P. 26(b)(1) allows parties to "obtain discovery regarding any matter, not privileged, that is relevant to the claim or *defense* of any party." Fed. R. Civ. P. 26(b)(1) (emphasis added). Accordingly, affirmative defenses alleging lack of final agency action and other

2

jurisdictional defenses are not resolved based on an administrative record. *See, e.g., Oregon Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 985 (9th Cir. 2006) (reviewing facts to determine if plaintiff was challenging final agency action); *Okinawa Dugong v. Rumsfeld*, 2005 WL 522106 *17 (N.D. Cal. March 2, 2005) (reviewing "evidence submitted" to assessing final agency action). This is because jurisdictional issues do not involve agency decision-making, judicial review of which is otherwise often restricted to an administrative record. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *cf. Florida Power & Light v. Lorion*, 470 U.S. 729, 744 (1985).

Thus, because BLM has made the issue of final agency action relevant to the resolution of Claim 2, under Rule 26(1) Plaintiffs are entitled to develop the factual record through discovery to support jurisdiction. *Laub*, 342 F.3d at 1093 ("discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted …") (quoting *Butcher's Union Local No. 498 v. SDC*, 788 F.2d 535, 540 (9th Cir. 1986)); *see also Wells Fargo v. Wells Fargo Express*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977) (noting discovery appropriate where pertinent facts bear on jurisdiction). In *Laub*, the Ninth Circuit Court of Appeals remanded summary judgment with directions to permit additional discovery "to establish federal subject matter jurisdiction." *Laub*, 342 F.3d at 1093 (directing discovery to ascertain federal government plays a significant enough role in interagency program to render actions taken pursuant to the program subject to NEPA requirements). The court stated that "'discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *See Ctr. for Biological Diversity, et al. v. Salazar, et al.*, No. 3:08-cv-08117-NVW, slip op. (July 13, 2009) (quoting *Laub*, 342 F.3d at 1092) (additional internal quotation omitted).[2]

---

[2] While BLM and Denison have raised several jurisdictional defenses in their Answers and in connection with briefing Plaintiffs preliminary injunction motion, at this time Plaintiffs have decided to limit jurisdictional discovery to the issue raised by BLM under *Bennett v. Spear*, and at this point, do not foresee there being relevant facts warranting discovery concerning the other defenses raised. However, should BLM or Denison raise additional jurisdictional defenses at some future point in this case, Plaintiffs may seek discovery to address those defenses as well.

Under *Bennett v. Spear*, a final BLM action is one that (1) marks the consummation of a BLM decisionmaking process, and (2) determines rights or legal consequences. This fact-based test focuses on whether the agency has made a "definitive statement" of its position, whether the agency's position "'has direct and immediate effect on the day-to-day operations' of the subject party", and/or whether "'immediate compliance [with the terms] is expected.'" *Or. Natural Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (internal citations omitted). Even if the agency has set forth terms through a prior action, courts will assess whether it has set forth its "last word" on the matter in a subsequent -- *i.e.*, "final" -- action permitting the activity to proceed. *Id.* at 985. This "finality element" is to be "interpreted in a pragmatic and flexible manner", *id.* (internal quotations omitted).[3]

Here, discovery will develop the facts needed to show BLM took a final agency action by focusing on BLM actions taken leading up to and including the time when Denison's active mining operations resumed. Discovery will assess how and the degree to which those actions affected or were the agency's "last word" on Denison's day-to-day operations, permitted Denison to proceed with active mining operations, or set forth terms to govern those operations. For instance, Plaintiffs are aware that BLM required Denison to update its reclamation bond for Arizona 1 and obtain all necessary permits before proceeding, thus discovery will delve into the activities leading up to Denison's satisfaction of these and similar requirements. *See* Dkt. 68, 73 ¶ 59 (BLM Answer admitting "BLM required Denison to post a new reclamation bond" before commencing operations); *id.* (BLM admitting that "[b]efore Denison could renew operations at the [AZ] 1 Mine, BLM required Denison to . . . secure an air permit" from Arizona Department of Environmental Quality or EPA); Exh. 3 at 1 (BLM Feb. 21, 2008 bonding decision); Exh. 4 at 1 (BLM explaining that "[t]he bond and financial documents have been examined, found satisfactory, and are therefore accepted effective

---

[3] Applying this two-part test to U.S. Forest Service-issued annual grazing authorizations to federal lands grazing permittees, for example, the Ninth Circuit Court of Appeals found that the yearly authorizations did not merely implement earlier final agency actions, but "represent[ed] the consummation of a process" that imposed "enforceable rights and obligations on the part of the permittee." *Id.* at 986 & n.12.

4

April 7, 2008"); *id.* at 2 (BLM's determination of the appropriate amount for the cost of surface reclamation for Arizona 1 operations); Exh. 5 at 1 ("mining and milling operations cannot start until all health, safety and environmental permits have been issued and an adequate reclamation bond has been accepted"); Exh. 6 (stating that BLM jurisdiction over Arizona 1 is predicated on whether the operation is violating the unnecessary or undue degradation standard, *e.g.*, "for lack of any state, county or local permits"); Exh. 7 (July 27, 2009 Email from BLM District Manager confirming that "[w]e have recently updated the reclamation bond[]" for Arizona 1 and "[o]nce the company receives their operating permits from ADEQ they may commence operations"); Exh. 8 (final air quality permit from ADEQ dated August 31, 2009).

Thus, discovery will address the practical consequences had Denison not secured a new reclamation bond or air permit. Discovery will also address the reasons why Denison did not begin mining until December 2009 despite its publicly-stated intention to begin in late 2007. Exh. 9 (Denison Press Release). Discovery would likewise identify all BLM "clearances" -- *e.g.*, "up-to-date" surveys for "special status" or threatened or endangered species -- that occurred prior to the resumption of mining operations, what the bases for such clearances were and whether, *e.g.*, the results of such clearances resulted in terms being placed on Denison's active mining operations. *See*, *e.g.*, Exh. 10 (BLM email chain re: Need for Plant Clearances).

While BLM's administrative record may be "relevant to whether agency action has occurred", evidence outside the record is nevertheless "relevant to the finality … or the ultimate effect of [BLM's] decision on the parties." Exh. 11 (*Ctr. for Biological Diversity, et al. v. Salazar, et al.*, slip op.) at *3-4; *see also id.* at *4 ("Even assuming that the evidentiary limitation on reviewing an agency's decision applies to the jurisdictional question of whether the agency has taken any action, limited discovery may be afforded if the administrative record is incomplete."). In short, through Requests for Admissions, and Interrogatories, and Requests for Production that delve into the matters listed above, Plaintiffs will fully develop the factual record to determine

and address BLM's activities in connection with allowing and putting terms on resumed mining operations at Arizona 1.[4]

## II. Discovery Is Necessary To Address The Merits Of Plaintiffs' Claim 2

Discovery is also appropriate to address the merits of Plaintiffs' Claim 2. This claim challenges BLM's failure to prepare a supplemental NEPA document for the 1988 Plan of Operations.

A supplemental NEPA review is required when the agency has additional actions to take and there is significant new information. Indeed, agencies typically make and document decisions not to prepare supplemental NEPA, and BLM's NEPA Handbook requires a formal document decision regarding whether supplemental NEPA is needed, but BLM did not do that in connection with Arizona 1. Exh. 12 at 5 ("When new circumstances or information arise prior to the implementation of the Federal action, but your evaluation concludes that they would not result in significant effects outside the range of effects already analyzed, *document your conclusion and the basis for it*.") (emphasis added). Had BLM made (and documented) such a decision, Plaintiffs' Claim 2 would involve a challenge to that decision as a final agency action and would be reviewable pursuant to the § 706(2) of the APA. *See*, *e.g.*, *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 561 (9th Cir. 2000) (holding that Forest Service's determination that an supplemental NEPA review was not required was not arbitrary and capricious)*; Native Ecosystems Council v. Tidwell*, 599 F.3d 926, 937 (9th Cir. 2010) (finding "unpersuasive" the Forest Service's justifications for its decision not to supplement an Environmental Assessment). Because BLM did not do so, however, and therefore there is no rationale or justification for such a decision for the Court to review,

---

[4] If, through further factual development, it becomes evident that BLM did in fact carry out a decisionmaking process in connection with its approval to commence active mining operations in late 2009 that meets the *Bennett v. Spear* test, Plaintiffs may challenge the rationale for such a decision pursuant to § 706(2) of the Administrative Procedure Act in summary judgment briefing. 5 U.S.C. § 706(2) (a "reviewing court shall … hold unlawful and set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "without observance of procedure required by law"; or "unwarranted by the facts"); *see also* Dkt. 68 ¶¶ 62, 68, 72 (Complaint challenging BLM's failures to act and, in the alternative, final agency actions for Claims 1-3).

Plaintiffs' Claim 2 is a failure-to-act claim that is properly reviewable under § 706(1) of the APA and not on the basis of an administrative record. *Friends of the Clearwater*, 222 F.3d at 560 ("An action to compel an agency to prepare an [supplemental NEPA review] … is not a challenge to a final agency decision, but rather an action arising under 5 U.S.C. § 706(1), to 'compel agency action unlawfully withheld or unreasonably delayed' … . In such cases, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record."); *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions."); *Consejo de Desarrollo Economico de Mexicali v. U.S.*, 438 F. Supp. 2d 1207, 1221-1222 (D. Nev. 2006) ("Because the remaining claims are actions to compel agency action unlawfully withheld, the Court will not limit its review to the Administrative Record.").[5]

In addition, Plaintiffs initially took no position regarding Federal Defendants' desire to lodge an administrative record with the Court in recognition that an administrative record may be relevant to whether major federal action occurred, but having now reviewed the administrative record compiled by BLM, it is apparent that there are gaps in the record that demonstrate why further factual development is necessary through discovery in order to determine the degree to which major federal action did occur (even if approval of a current plan of operations did not). *See* Exh. 11 (*Ctr. for Biological Diversity, et al. v. Salazar, et al.*, slip op.) at *4 (noting that "[e]ven assuming that the evidentiary limitation on reviewing an agency's decision applies to the jurisdictional question of whether the agency has taken any action, limited discovery may be afforded if the administrative record is incomplete") (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004) (listing exceptional situations where a

---

[5] In *Friends of the Clearwater v. Dombeck*, environmental groups initially challenged the Forest Service's failure to prepare a supplemental NEPA analysis. While the case was pending, however, the agency made and documented a decision not to prepare a supplemental NEPA review. The Ninth Circuit then reviewed and upheld that decision under § 706(2) of the APA. *See id.* at 561.

district court may permit extra-record discovery "to identify and plug holes in the administrative record")).

The most glaring gap in the record involves BLM's permitting and other activities in connection with its 1988 approval of mining operations at Arizona 1. Then, as it did recently, the agency required the Arizona 1 operator to secure a reclamation bond and an air permit before commencing operations, yet the record is almost completely devoid of records: (1) concerning the Environmental Protection Agency's (EPA) permitting for air emissions for Arizona 1 in 1988, (2) demonstrating compliance with the State of Arizona air quality laws and standards in 1988, (3) demonstrating compliance with the State of Arizona's groundwater protection laws in 1988, (4) concerning the decisionmaking process for establishing reclamation and other bonding requirements in 1988, or (5) demonstrating compliance with BLM's duty to ensure mining activities do not result in unnecessary or undue degradation in connection with BLM's approval of the 1988 Plan. BLM has claimed that "to the best of BLM's knowledge, all applicable documents are in the Record", *see* Exh. 13, but the initial record did not even contain the 1988 air permit for Arizona 1, and even now, does not include any other documents related to air permitting for Arizona 1, such as correspondence, meeting records, draft documents, or data (including air quality monitoring data).[6]

Plaintiffs seek to fill these gaps in the administrative record through discovery -- not to challenge BLM actions taken in 1988, but to assess the similarities between the 1988 approval process and the 2009 approval process. Although BLM has prepared no new plan of operations in connection with its 2009 approval, it nevertheless required the operator to secure new bonding and new permits before proceeding. In 1988, the agency prepared a NEPA environmental review in connection with those approvals; in 2009, it did not, and did not even make a reasoned decision for why it did not. Accordingly, through the use of Interrogatories, Requests for Admissions, and Requests

---

[6] After Plaintiffs highlighted the absence of any records related to air permitting by EPA in BLM's administrative record, Denison produced the 1988 air permit and BLM has agreed to supplement the administrative record to include it. Exh. 13 .

for Production, and, if necessary, a second round of discovery that may include Depositions, Plaintiffs must be allowed to develop a factual record to show that, despite the absence of a new plan or an official "decision" concerning supplemental NEPA in 2009, major federal action did occur, just as it did in 1988.

III. Discovery Is Necessary To Develop The Factual Record To Address Matters Related To Remedy

Lastly, it is well-settled that issues of remedy are not governed by an administrative record and therefore, discovery may be appropriate here to determine: (1) whether the equities entitle Plaintiffs to an injunction in the first instance, and (2) if so, the proper scope of an injunction. Unlike the merits of claims that challenge an agency decision, injunctive relief raises unique factual issues. *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d at 738 (recognizing injunctive relief raise[s] intensely factual issues,). Injunctive relief requires the court to engage in the traditional balance of harms analysis. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 (9th Cir. 1995) (Appellants should be allowed to present evidence to the court that 'unusual circumstances weigh against the injunction sought, and to present evidence to assist the court in fashioning the appropriate scope of whatever injunctive relief is granted.). Thus, courts conduct evidentiary hearings to consider the remedy issue, including whether to issue injunctions. *See*, *e.g.*, *Natural Resources Defense Council v. Kempthorne*, 2007 WL 4462395 *1 (E.D. Cal. Dec. 14, 2007); *Montana Wilderness Ass'n v. Fry*, 408 F.Supp.2d 1032 (D. Mont. 2006).

Thus, Plaintiffs seek discovery here in order to fully develop the factual record related to whether the equities entitle Plaintiffs to an injunction – in particular, the degree to which active mining operations are harming Plaintiffs. BLM's approval of mining operations in 2009 has already resulted in numerous adverse impacts to environmental and cultural resources. Accordingly, Plaintiffs seek to propound written discovery on Denison to assess the extent of operations, particularly since active operations begin in late 2009, related to: (1) construction of the mine shaft, including further downward construction of the primary mine shaft as well as any horizontal

9

drillings, which lead to groundwater contamination (2) the stockpiling of radioactive ore at the Mine site that has occurred since initial approval by BLM in 1988 as well as since active mining operations began in 2009, (3) the presence of Mine-related structures and debris, and the presence and makeup of wastewater ponds,  (4) the amount of ore that has been mined, stockpiled, and transported to the White Mesa Mill in Utah, including the number of ore haulage trucks that have transported, are transporting, and will continue to transport ore to the Mill barring injunctive relief, (5) emissions of radon, including the levels of radon emissions, locations of monitoring stations, and the test method being used to detect such emissions, and (6) the nature and extent of impacts resulting from mining operations to archaeological and cultural resources.  Discovery on these matters will concern these specific matters, as well as whether and the degree to which BLM has evaluated or been consulted about any of them since mining operations resumed in late 2009.

## CONCLUSION

To provide for a fully developed factual record to provide a basis for deciding the parties' motions for summary judgment, and because discovery of BLM's jurisdictional defense alleging lack of final agency action, the merits of Claim 2, and Plaintiffs' entitlement to injunctive relief and the scope of such relief is warranted, Plaintiffs seek limited discovery on these issues.  Plaintiffs' proposed schedule for proceeding with discovery on these issues will assure full factual development in an expeditious and prudent manner.


Respectfully submitted,


Dated: July 22, 010                               */s/ Amy R. Atwood*
                                                  Amy Atwood
                                                  Neil Levine
                                                  Roger Flynn

                                                  Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2010, I electronically transmitted Plaintiffs' Memorandum In Support Of Discovery using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Amy R. Atwood
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel: 503-283-5474
Fax: 503-283-5528
Email: atwood@biologicaldiversity.org

Neil Levine, Esq.
Grand Canyon Trust
2539 Eliot Street
Denver, CO 80211
Tel: 303-455-0604
Fax: 303-484-8470
Email: nlevine@grandcanyontrust.org

Roger Flynn
Western Mining Action Project
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
Tel: 303-823-5738
Fax: 303-823-5732
Email: wmap@igc.org

Michael D. Thorp
US Dept of Justice
ENRD
601 D St., Room 3112
Washington, DC 20004
Tel: 202-305-0456
Fax: 202-305-0267
Email: michael.thorp@usdoj.gov

Tyler Welti
Trial Attorney
U.S. Dept. of Justice
ENRD
P.O. Box 663
Washington, DC 20044
Tel: 202-305-0481
Fax: 202-305-0274
Email: Tyler.Welti@usdoj.gov

Bradley J. Glass
Gallagher & Kennedy, P.A.
2575 E. Camelback Road
Suite 1100
Phoenix, Arizona 85016
Tel.: 602-530-8034
Fax: 602-530-8500
E-mail: brad.glass@gknet.com

*/s/ Amy Atwood*
Amy Atwood