# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity; Grand Canyon Trust; Sierra Club; Kaibab Band of Paiute Indians of the Kaibab Indian Reservation; and the Havasupai Tribe,<br><br>Plaintiffs,<br><br>vs.<br><br>Ken Salazar, Secretary of the Interior; United States Bureau of Land Management; Denison Arizona Strip, LLC; and Denison Mines (USA) Corp.,<br><br>Defendants. | No. 09-08207-PHX-DGC<br><br>**ORDER** |

This case arises from the renewed operation of the Arizona 1 Mine, a uranium mine near Grand Canyon National Park. Plaintiffs allege that Federal Defendants Secretary of the Interior Ken Salazar and the U.S. Bureau of Land Management (collectively "BLM") violated mining and environmental laws by allowing the mine to resume operations, including the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* (NEPA) and the Federal Land Policy and Management Act, 43 U.S.C. § 1732(b) (FLPMA).

Plaintiffs alleged five claims in the Third Amended Complaint: (1) BLM violated the FLPMA and 1872 Mining Law by failing to approve a new plan of operations for uranium exploration and mining activities at the Arizona 1 Mine; (2) alternatively, BLM

1 failed to prepare a supplement to the 1988 Environmental Analysis to consider new circumstances and information relevant to environmental concerns related to the Arizona 1 Mine, in violation of NEPA; (3) BLM failed to prevent the unnecessary and undue degradation of public lands; (4) BLM violated NEPA by relying on a categorical exclusion for the 2008 free use permit issued to Mohave County to mine and extract gravel from Robinson Wash; and (5) BLM violated NEPA in making its 2008 Bonding Decision for the Arizona 1 Mine. Doc. 126.

On May 27, 2011, the Court granted summary judgment in favor of Defendants and against Plaintiffs on Claims One, Two, Three, and Five. Doc. 163. The Court remanded the categorical exclusion issue in Claim Four to BLM for further consideration. *See* Fed. R. Civ. P. 56(e). The Court gave BLM until June 24, 2011, to revise its decision to apply a categorical exclusion to the free use permit. Doc. 163.

In 2008, Mohave County applied for a free use permit to excavate gravel from Robinson Wash for road maintenance purposes. Doc. 134, Exhibit 45, at 26. In a NEPA document dated April 24, 2008 (Doc. 134, Exhibit 49, at 90-95), BLM determined that the excavation was "categorically excluded" from further NEPA analysis because it was limited to a five-acre area and no more than 50,000 cubic yards of gravel. Doc. 134, Exhibit 49, at 92. BLM also determined that the categorical exclusion was appropriate because there were "no extraordinary circumstances potentially having effects that may significantly affect the environment." *Id.* at 93. Denison, under contract with Mohave County, uses the gravel from Robinson Wash to maintain Mt. Trumbell Road, an access route to the Arizona 1 mine.

As required by the Court, BLM filed on June 24, 2011 an explanation for its determination that the free use permit was categorically excluded. Doc. 165-1. After a telephone conference on the record with the parties, the Court entered an order on July 22, 2011 (Doc. 173) permitting Plaintiffs to supplement the Third Amended Complaint to include BLM's June 24, 2011 explanation as part of Claim Four. Doc. 175, at 28, ¶ 81A. The parties' previous motions for summary judgment on Claim Four were deemed to

apply to Claim Four as supplemented. Doc. 173. Plaintiffs filed the supplemental complaint on July 22, 2011. Doc. 175. BLM filed the administrative record with respect to the June 24, 2011 explanation. Doc. 176.

Pursuant to the Court's July 22, 2011 order, the parties filed simultaneous memoranda addressing their respective positions on (a) the merits of Claim Four in light of BLM's June 24, 2011 explanation and Plaintiffs' supplementation of Claim Four, and (b) any remedies the Court should impose if it grants summary judgment in favor of Plaintiffs on Claim Four. Docs. 178, 179, 180. The parties then filed simultaneous responses. Docs. 181, 182, 183.

Claim Four as supplemented has been fully briefed. Docs. 178-183. The Court does not deem that oral argument is necessary. For the reasons below, the Court grants summary judgment on Claim Four in favor of Defendants and against Plaintiffs.

## I. Defendants Have Adequately Explained the Categorical Exclusion.

Plaintiffs do not challenge the categorical exclusion itself, but instead argue that BLM's June 24, 2011 explanation for the categorical exclusion is inconsistent with NEPA's requirement of a comprehensive assessment of cumulative impacts. Doc. 175, at 28, ¶ 81A; 40 C.F.R. § 1508.25(c). Actions which do not individually or cumulatively have a significant effect on the environment fall within categorical exclusions for which "neither an environmental assessment nor an environmental impact statement is required." 40 C.F.R. § 1508.4. Further NEPA review is not required for categorical exclusions unless there are "extraordinary circumstances" related to the proposed action. *Id. See also Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 858 (9th Cir. 1999). Any regulation adopting a categorical exclusion must "provide for extraordinary circumstances in which a normally excluded action may have a significant environmental effect." 40 C.F.R. § 1508.4; *Alaska Ctr.*, 189 F.3d at 859; *Jones v. Gordon*, 792 F.2d 821, 827 (9th Cir. 1986). BLM identifies one such extraordinary circumstance in its NEPA Handbook: a proposed action having "a *direct relationship* to other actions with individually insignificant but cumulatively significant environmental impacts."

Doc. 132, Exhibit 26, at 93 (emphasis added). Because the gravel extraction authorized by the free use permit falls under a categorical exclusion, the relevant question is whether this action is an "extraordinary circumstance" for which further NEPA review is required.

In its initial NEPA document pertaining to the free use permit (Doc. 134, Exhibit 49), BLM stated that "there are no extraordinary circumstances potentially having effects that may significantly affect the environment." One of the factors reviewed on BLM's extraordinary circumstances checklist was whether the proposed action had a "direct relationship to other actions with individually insignificant, but cumulatively significant, environmental effects." The NEPA document provided only a one-word response: "No." Doc. 134, Exhibit 49, Attachment 1.

When an agency applies a categorical exclusion and proceeds with an action without preparing an environmental analysis (EA) or environmental impact statement (EIS), the agency must adequately explain its decision. Doc. 163, at 23; *Alaska Ctr.*, 189 F.3d at 859. "An agency cannot avoid its statutory responsibilities under NEPA merely by asserting that an activity it wishes to pursue will have an insignificant effect on the environment." *Alaska Ctr.*, 189 F.3d at 859 (quoting *Jones v. Gordon*, 792 F.2d 821, 827 (9th Cir. 1986)). In its May 27, 2011 order, the Court found that BLM's unexplained conclusion that the free use permit had no "cumulatively significant" environmental effects was insufficient to support its application of the categorical exclusion. Doc. 163, at 23 (citing *California v. U.S. Dep't of Agric.*, 575 F.3d 999, 1017-18 (9th Cir. 2009)).

Following the Court's remand, BLM provided detailed rationale for its finding of no significant cumulative effects with respect to the free use permit. Doc. 165-1. BLM explained that Robinson Wash had previously been used as a gravel source for road repairs and maintenance. Doc. 165-1. Rain naturally replenished the gravel removed. *Id.* The gravel would be used for previously-approved maintenance of Mt. Trumbell Road "within its existing footprint in accordance with BLM's 1986 Decision to issue a right-of-way ("ROW") to Mohave County." *Id.*

Further, BLM noted that "Mohave County has used various sources of gravel over

the years for the repairs and maintenance, including a location in Robinson Wash." *Id.* Because maintaining Mt. Trumbell Road does not depend on the availability of gravel from Robinson Wash, BLM did not find a direct relationship between the free use permit and road maintenance. *Id.* BLM also found no direct relationship between the free use permit and the mining operations within the Arizona Strip because BLM approved mining operations at Arizona 1 Mine in 1988 and its approval of the free use permit did not occur until 2008. Doc. 180, at 5. Because there is no direct relationship between the action authorized by the free use permit and the road maintenance and mining activities, BLM concluded that the free use permit was not an "extraordinary circumstance" requiring further NEPA analysis.

In its explanation, BLM referred to a prior EA analyzing the Arizona 1 Mine's Plan of Operations in support of its conclusion that the mining operations and the free use permit are not directly related. Doc. 165-1. Plaintiffs argue that NEPA regulations for tiering and incorporation by reference are limited to EISs and that Defendants may not rely on prior EAs in its analysis. But the relevant statute governing tiering is discretionary, not mandatory. 40 C.F.R. § 1502.20 ("Agencies are *encouraged* to tier their environmental impact statements to eliminate repetitive discussions of the same issues.") (emphasis added). Further, the statute providing for incorporation by reference pertains to the preparation of environmental impact statements. 40 C.F.R. § 1502.21 ("Agencies shall incorporate material into an environmental impact statement by reference when the effect will be to cut down on bulk without impeding agency and public review of the action."). BML's June 24, 2011 explanation was not an EIS, nor was one required because of the categorical exclusion. Thus, the tiering and incorporation by reference statutes do not preclude BML from referencing prior EAs.

**II.    Defendants' Categorical Exclusion is Entitled to Deference.**

Courts review an agency's determination that an action falls within a categorical exclusion under the Administrative Procedure Act's "arbitrary and capricious" standard. *Alaska Ctr.*, 189 F.3d at 857. "To determine whether an agency action is arbitrary or

capricious, a court must consider 'whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Id.* at 859 (quoting *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989)). An agency's factual determination of whether the environmental impacts are significant or not "implicates substantial agency expertise and is entitled to deference." *Id. See also Greenpeace Action v. Franklin*, 14 F.3d 1324 (9th Cir. 1992) (applying a deferential standard when reviewing agency determinations under NEPA).

BLM considered relevant factors in its analysis of the free use permit. The CEQ regulations provide certain factors that should be considered in determining whether an action will significantly effect the environment, including (1) the degree to which the proposed action affects public health or safety, (2) the degree to which the effects will be highly controversial, and (3) whether the action is related to other action which has individually insignificant, but cumulatively significant, impacts. 40 C.F.R. § 1508.27(b). These were among the factors that BLM addressed in its NEPA document. Doc. 134, Exhibit 49, Attachment 1.

The Court finds that BLM's June 24, 2011 attachment articulates a rational connection between the facts surrounding the extraction of gravel from Robinson Wash and its conclusion that there are no extraordinary circumstances warranting the preparation of an EA or EIS. *See, e.g.*, *Alaska Ctr.*, 189 F.3d, at 859 ("[A]s long as there is a rational connection between the facts and the conclusions made, [the agency] has not acted arbitrarily."). Applying the deferential standard of review that courts employ when reviewing factual conclusions within an agency's expertise, the Court concludes that BLM's June 24, 2011 explanation was not arbitrary or capricious and that it properly determined that there was no extraordinary circumstance requiring further NEPA analysis.

**IT IS ORDERED:**

1. Summary judgment is granted in favor of Defendants and against Plaintiffs with respect to Claim Four of the Third Amended Complaint.

2. The Clerk is directed to terminate this action.

Dated this 7th day of October, 2011.

_____
David G. Campbell
United States District Judge