Amy Atwood, *pro hac vice*
Center for Biological Diversity
P.O. Box 11374
Portland, Oregon 97211-0374
Tel: 503-283-5474
atwood@biologicaldiversity.org

Neil Levine, *pro hac vice*
4438 Tennyson Street
Denver, CO 80212
Tel: 303-455-0604
nlevine@grandcanyontrust.org

Roger Flynn, *pro hac vice*
Western Mining Action Project
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
Tel: 303-823-5738; Fax: 303-823-5732
wmap@igc.org

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, *et al.*, | Case No. 3:09-cv-08207-DGC |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR INJUNCTION PENDING APPEAL |
| v. | |
| Salazar, *et al.*, | |
| Defendants, | |
| and | |
| Denison Arizona Strip, LLC, *et al.*, | |
| Intervenor-Defendants. | |

# INTRODUCTION

In accordance with Federal Rule of Appellate Procedure 8 and Federal Rule of Civil Procedure 62(c), Plaintiffs seek an injunction enjoining all mining activities associated with the Arizona 1 uranium mine pending the outcome of their appeal. Fed. R. App. P. 8(a)(1)(C); Fed. R. Civ. P. 62(c). On October 7, 2011, the Court entered final judgment on all claims after granting summary judgment for Defendants and against Plaintiffs on Claim 4. Dkt. 184; Dkt. 185. Plaintiffs filed a Notice of Appeal on November 28, 2011. Dkt. 186.

Plaintiffs satisfy the requirements for an injunction pending appeal. At a minimum, Plaintiffs have raised serious questions on the merits of their claims, which present several issues of first impression under the National Environmental Policy Act ("NEPA"), the Federal Land Policy and Management Act ("FLPMA"), the General Mining Law of 1872, and BLM's implementing regulations for these laws. See Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) ("Cottrell") ("serious questions going to the merits[] and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest"). Arizona 1 mining operations are irreparably harming Plaintiffs' interests and the balance of harms and the public interest tip sharply in favor of the requested injunction.

In support of this motion, Plaintiffs incorporate and rely on the many declarations that they have filed in this case which describe the harms they have suffered and continue to be subjected to resulting from uranium mining operations on the Arizona Strip. Plaintiffs also incorporate their summary judgment briefing as well as their prior preliminary injunction briefing because the standard for issuing an injunction pending appeal is the same as for a preliminary injunction. Lopez v. Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983).

Plaintiffs also respectfully request expedited consideration of this Motion because the parties have already briefed the issues presented and addressed by this

1

Court, and because the harms are ongoing. Plaintiffs file this Motion with this Court to satisfy Ninth Circuit rules, Fed. R. App. P. 8(a)(1)(C), but intend to file a similar motion in the Ninth Circuit in short order due to the continuing nature of their irreparable harms. See Dkt. 87 (Ninth Circuit Order denying injunctive relief without prejudice to its renewal following this Court's ruling on the motion for injunction pending appeal).

## ARGUMENT

### I. THE COURT SHOULD GRANT PLAINTFFS INJUNCTIVE RELIEF AS PLAINTIFFS HAVE RAISED SERIOUS QUESTIONS GOING TO THE MERITS OF THEIR CLAIMS.

Although this case is on appeal, Federal Rule of Appellate Procedure 8(a)(1) and Federal Rule of Civil Procedure 62(c) authorize the Court to consider this Motion. FRAP 8(a)(1)(C) authorizes the district court to issue "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Rule 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on ... terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c); Mayweathers v. Newland, 258 F.3d 930, 935 (9th Cir. 2001) (district court has jurisdiction to issue order to preserve status quo while case is on appeal).

### A. The Court Should Grant An Injunction Pending Appeal When Plaintiffs Are Likely To Suffer Irreparable Harm And Have Raised Serious Questions On the Merits.

Under Ninth Circuit and Supreme Court precedent, a party meets the test for injunctive relief if it has raised "serious questions" going to the merits of the case, the balance of hardships "tips sharply" towards the movant, the movant is "likely" to suffer irreparable harm in the absence of an injunction, and the requested relief is in the public interest. Cottrell, 632 F.3d at 1134-35; Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).[1]

---

[1] The Ninth Circuit held that the "serious questions" test survived the Supreme Court's recent decision in Winter, but acknowledged that the test at the other end of the sliding scale continuum -- that a party need only show the possibility of irreparable harm where its success on the merits is likely -- did not survive Winter. Cottrell, 632 F.3d at 1131-32.

1      District courts have applied <u>Cottrell</u> and <u>Winter</u> many times to issue injunctive
2 relief where the movant raised serious questions going to the merits of its claims. <u>See</u>,
3 e.g., <u>Bickoff v. Wells Fargo, N.A.</u>, No. 11-cv-2452, 2011 U.S. Dist. LEXIS 126906
4 (S.D. Cal. Nov. 2, 2011) (enjoining lender from proceeding with the trustee's sale of
5 Plaintiff's real property where Plaintiff raised serious questions on the merits); <u>AT&T
6 Mobility LLC v. Bernardi</u>, No. 11-03992, 2011 U.S. Dist. LEXIS 124084 (N.D. Cal.
7 Oct. 26, 2011) (enjoining arbitrations where "[a]t a minimum, [movant] has raised
8 serious questions warranting relief"); <u>Winnemucca Indian Colony v. U.S. ex rel. DOI</u>,
9 No. 11-cv-00622, 2011 U.S. Dist. LEXIS 108152 (D. Nev. Sept. 12, 2011) (enjoining
10 the BIA from interfering with activities on colonial land by the tribal council); <u>Or.
11 Natural Desert Ass'n v. McDaniel</u>, No. 09-369, 2011 U.S. Dist. LEXIS 100815 (D. Or.
12 July 8, 2011) (issuing tailored injunction where plaintiff "raise[d] serious questions
13 going to the merits of its claims, demonstrate[d] irreparable harm will occur…,
14 show[ed] the balance of hardships tip sharply in its favor, and establishe[d] that the
15 public interest of preventing environmental injury requires an injunction"). This Court
16 recently issued an injunction pending appeal upon finding that serious questions were
17 raised. <u>Gila River Indian Cmty. v. United States</u>, No. 10-1993, 2011 U.S. Dist. LEXIS
18 50210, at *1-2 (D. Ariz. May 3, 2011) (granting motion for injunction pending appeal
19 where Plaintiffs raised "substantial legal questions warranting more deliberative
20 consideration on appeal").

21      Accordingly, the Court should apply <u>Cottrell</u> and <u>Winter</u> here, to assess whether
22 Plaintiffs have, at a minimum, raised serious questions going to the merits of their
23 claims and whether they will suffer irreparable harm if uranium mining activities on the
24 Arizona Strip are not enjoined.

25      B.   <u>Plaintiffs Have Raised Serious Questions That Warrant More Deliberative Consideration On Appeal.</u>
26
27      Plaintiffs maintain that they are likely to succeed on the merits of their claims on
   appeal. However, Plaintiffs also recognize that the Court ultimately decided against
28 them on all claims. Plaintiffs therefore respectfully request that in deciding the present

1  Motion the Court consider, consistent with <u>Cottrell</u>, whether Plaintiffs' claims
2  nevertheless raise serious questions. Plaintiffs incorporate their prior summary judgment
3  briefing to demonstrate "serious questions" going to the merits of their claims.

4      The Court's prior rulings confirm that Plaintiffs' claims raise serious questions
5  about the merits. The Court initially characterized  BLM's legal position on Plaintiffs'
6  Claim One and Claim Three as problematic, Dkt. 71 at 4, 5, and consistently
7  acknowledged the ambiguity in BLM's relevant regulatory scheme. The Court rejected
8  Plaintiffs' interpretation of the 3809 Regulations not based on an argument offered by
9  BLM, but based on the Court's own reading of the regulatory phrase "as long as" in 43
10 C.F.R. § 3809.423 from the dictionary. Dkt. 163 at 10. The Court also afforded
11 deference to BLM in ruling on these two claims, even though there was no evidence or
12 indication that BLM ever presented the interpretation offered by the Court. Thus,
13 regardless of whether the Court's interpretation is upheld, the Court should find that
14 Claim One and Three raise do raise serious questions that warrant more deliberative
15 consideration on appeal. <u>Gila River Indian Cmty.</u>, 2011 WL 1656486, at *1-2 (granting
16 motion for injunction pending appeal where Plaintiffs raised "substantial legal questions
17 warranting more deliberative consideration on appeal").

18     Indeed, these two claims raise issues of first impression to be decided by the
19 Ninth Circuit. They test whether it is lawful, under the relevant statutory and regulatory
20 scheme, for BLM to approve plans of operation to mine radioactive uranium ore on
21 public lands that can effectively remain in effect for decades, without revision to
22 account for changed circumstances or new information.

23     Similarly, as relevant to Plaintiffs' supplemental NEPA argument in Claim Two,
24 Plaintiffs are aware of no other cases in which BLM has successfully characterized
25 actions like those it took here -- <u>i.e.</u>, requiring Denison to obtain required air and water
26 permitting, issuing a permit to use gravel from public lands to rehabilitate ore haulage
27 roads, and updating a reclamation bond -- as nothing more than insignificant
28

"monitoring" activities that require no NEPA review in an environmental assessment or environmental impact statement.[2]

Likewise, as put at issue by Claim Five, to Plaintiffs' knowledge the question of whether BLM updating a reclamation bond that facilitates uranium ore mining on public lands is subject to NEPA has also never been decided by the courts. And as it did with Claim Four, BLM has never before taken the position that it may lawfully issue a gravel mining permit without considering the use of the gravel as part of the required cumulative impacts analysis. However these issues are ultimately decided, they will have far-reaching consequences for possibly thousands of other old uranium mines on public lands in the Grand Canyon watershed. See Exh. 1 (noting that BLM estimates that there are 4,812 "active claims" for uranium on BLM lands within the Grand Canyon watershed).

For these reasons, Plaintiffs have raised serious questions going to the merits of their claims.

## II. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM FROM URANIUM MINING ACTIVITIES ON THE ARIZONA STRIP AND AT ARIZONA 1, AND WILL CONTINUE TO SUFFER THESE HARMS UNLESS THE COURT ENJOINS THESE ACTIVITIES.

Mining operations at Arizona 1 have irreparably harmed Plaintiffs and will continue to do so unless enjoined. See Am. Trucking Ass'n v. City of L.A., 559 F.3d 1046, 1052 (9th Cir. 2009). This is made evident by the many declarations attesting to such harms that Plaintiffs have filed in this case.

To summarize, these declarations describe how resumed mining operations at Arizona 1 are harming Plaintiffs from the repeated uranium ore haul trucks that pass along Mt. Trumbull Road -- through the aboriginal territory of Plaintiffs Kaibab Paiute Tribe and Havasupai Tribe, and the current Reservation of the Kaibab Paiute Tribe -- and through public lands that Plaintiffs routinely use for cultural, spiritual, recreational, and other pursuits. See Rogers Decl. ¶¶ 9, 13; Jake Decl. ¶¶ 3-5; Homer Decl. ¶¶ 4, 5.

---

[2] If these agency actions are mere monitoring activities, then no BLM regulatory decision would ever require the agency to evaluate and disclose to the public the impacts of such regulatory decisions.

5

Plaintiffs discussed how in addition to directly harming resources and foreclosing their ability to access and enjoy sites that they otherwise routinely visit, these trucks are a source of airborne radiation from the uranium ore they transport. Dkts. 37-2; 37-3; 37-4; 37-6; 37-7; 37-8; 37-9; 45-2; 81-1, 81-2; 81-3; 130-1; 130-2; 130-3; 130-4; 130-5; 149-1; 149-2; 149-3; 149-4. Plaintiffs discussed the emerging information that correlates uranium mining activities with the contamination of water and surface resources, which further prevents them from taking part in the activities that they otherwise would. See id.

Further, these harms will continue at least as long as active mining is occurring at Arizona 1. See Dkt. 37-4 (Crumbo Dec.) at ¶ 7; Dkt. 45-2 (Homer Dec.) at ¶ 6; Dkt. 37-6 (Jake Dec.) at ¶ 7; Dkt. 37-7 (McKinnon Dec.) at ¶ 17; Dkt. 37-9 (Rogers Dec.) at ¶ 15; Dkt. 130-3 (Clark Dec.) at ¶ 8; Dkt. 130-4 (Manakaja Dec.) at ¶ 13; Dkt. 130-5 (McKinnon Dec.) at ¶ 17. And according to recent news articles, mining at Arizona 1 will likely continue through at least 2012. See M. Quinones, E&E, Enviros ask appeals court to halt uranium project (Nov. 29, 2011).

Plaintiffs also discussed how their harms will likely persist long after Denison is done with Arizona 1. For example, the gravel permit at issue in Plaintiffs' Claim Four was not solely for rehabilitating the Mt. Trumbull access roads for Arizona 1, but to provide access for other uranium mining operations located in the Arizona Strip as well. See, e.g., Dkt. 149-3 (McKinnon Dec.) at ¶ 4 ("BLM's issuance of the Free Use Permit injures my recreational and aesthetic interests in the Arizona Strip area, because it allowed Denison to extract gravel from BLM lands and rehabilitate and maintain Mt. Trumbull Road, so that Denison's uranium ore haulage trucks could haul ore back and forth between the Arizona 1 and other uranium mines to the White Mesa Mill in Blanding, Utah."); Dkt. 149-4 (Clark Dec.) ("The Free Use Permit will also allow Denison to haul radioactive uranium ore from other, similarly situated uranium mines like Pinenut and Kanab North as well as several uranium exploration sites on the Arizona Strip. This creates noise, industrializes the landscape, and emits radioactive dust.").

Moreover, the number of "active claims" in the Grand Canyon watershed together with the legacy of radioactive contamination that has been documented in the area to water, soils, and wildlife -- most recently, in the NEPA review supporting the Department of Interior's proposal to withdraw about one million acres of public lands from new uranium mining claims for 20 years -- guarantee that the harms caused to Plaintiffs will persist for many years to come. See Exh. 2 (Withdrawal FEIS excerpts) at 6 (noting that at "existing mines operating under interim management (some for decades) … there is the potential for drainage and accumulation of perched groundwater, if present, in these mines as natural recharge occurs"); id. at 36 (elevated uranium concentrations near "historic mining" on the Arizona Strip that "reflect the reclamation practices that were conducted under the regulatory framework that existed during the 1980s"); Exh. 1 (noting that BLM estimates that there are 4,812 "active claims" for uranium on BLM lands within the Grand Canyon watershed); see also Dkt. 37-3 (Clark Dec.) at ¶ 5 ("Past uranium mining on Grand Canyons South Rim has negatively impacted my recreational experiences" due to radioactive contamination of Horn Creek); Dkt. 130-5 (McKinnon Dec.) at ¶ 10 (if not for the pollution of Kanab Creek from past uranium mining "I would swim in these waters").

These environmental and cultural harms to Plaintiffs -- which BLM and Denison have never refuted -- are irreparable. See Sierra Club v. Bosworth, 510 F.3d 1016, 1033 (9th Cir. 2007); S. Fork Band Council of W. Shoshone v. U.S. Dep't of the Interior, 588 F.3d 718, 728 (9th Cir. 2009); cf. Gila River Indian Cmty., 2011 U.S. Dist. LEXIS 50210, at *9-10 (finding irreparable harm where tribal members "likely will suffer irreparable quality-of-life injuries" without injunctive relief). BLM has never analyzed or disclosed these impacts from uranium mining at Arizona 1 in any NEPA document. See S. Fork Band, 588 F.3d at 728 ("likelihood of irreparable environmental injury without adequate study of the adverse effects and possible mitigation is high"). The 1988 EA is necessary limited to information available at that time and fails to account for over 22 years of new information regarding environmental impacts. Unless enjoined,

Plaintiffs will continue to suffer these harms. Accordingly, the Court should issue an injunction until Plaintiffs' claims can be decided by the Ninth Circuit.

III. THE BALANCE OF HARMS AND PUBLIC INTEREST WARRANT AN INJUNCTION PENDING APPEAL.

Plaintiffs incorporate their prior preliminary injunction briefing, and summarize below why the balance of harms tip sharply in Plaintiffs' favor and why injunctive relief is in the public interest.

First, the public has an interest in protecting the iconic Grand Canyon National Park and the water supply for the millions of people in the Southwest's largest cities. The Department of the Interior has recognized the significance of the resources at risk from uranium mining by proposing to withdraw from mining one million acres of public lands surrounding Grand Canyon National Park. Additionally, as the Ninth Circuit has made clear, Congress enacted NEPA and FLPMA to preserve the public's interest in environmental and cultural resources. See S. Fork Band, 588 F.3d at 728 ("Congress's determination in enacting NEPA was that the public interest requires careful consideration of environmental impacts before major federal projects may go forward. Suspending a project until that consideration has occurred thus comports with the public interest.").

BLM and Denison will again offer financial reasons to avoid an injunction. But such economic harms are not irreparable and are temporary in nature, and are vastly outweighed by the harms that Plaintiffs continue to experience in the absence of injunctive relief. See id.; Save Our Sonoran v. Flowers, 408 F.3d 1113, 1124-25 (9th Cir. 2005). Moreover, the mine had previously been closed. Denison and its predecessors stopped all mining activities at Arizona 1 in 1992 and, despite intentions to resume mining in late 2007, did not begin mining at Arizona 1 until late December 2009. An injunction that closes the mine pending appeal will be of similarly limited duration.

For these reasons, the balance of harms tip sharply in Plaintiffs' favor and the public interest favors injunctive relief until the Ninth Circuit can address the critical legal issues raised by the case's merits.

Dated: December 8, 2011                         Respectfully submitted,


*/s/ Amy Atwood*
Amy R. Atwood
Center for Biological Diversity

Neil Levine
Grand Canyon Trust

Roger Flynn
Western Mining Action Project

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2011, I electronically transmitted the foregoing memorandum in support of Plaintiffs' Motion for Injunction Pending Appeal to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael D. Thorp
US Dept of Justice, ENRD
601 D St., Room 3112
Washington, DC 20004
Tel: 202-305-0456
Fax: 202-305-0267
Email: michael.thorp@usdoj.gov

Tyler Welti
U.S. Dept. of Justice, ENRD
P.O. Box 663
Washington, DC 20044
Tel: 202-305-0481
Fax: 202-305-0274
Email: Tyler.Welti@usdoj.gov

Rickey Turner
US Dept of Justice, ENRD
Wildlife & Marine Resources Section
South Terrace
999 18th St., Ste. 370
Denver, CO 80202
Tel: 303-844-1373
Email: rickey.turner@usdoj.gov

Bradley J. Glass
Gallagher & Kennedy PA
2575 E. Camelback Rd., Ste. 1100
Phoenix, AZ 85016-9225
Tel: 602-530-8000
Fax: 602-530-8500
Email: brad.glass@gknet.com

David J. DePippo
Gallagher & Kennedy PA
2575 E. Camelback Rd., Ste. 1100
Phoenix, AZ 85016-9225
Tel: 602-530-8244
Fax: 602-530-8500
Email: david.depippo@gknet.com

Michael K. Kennedy
Gallagher & Kennedy PA
2575 E. Camelback Rd., Ste. 1100
Phoenix, AZ 85016-9225
Tel: 602-530-8000
Fax: 602-530-8500
Email: mkk@gknet.com

/s/ *Amy Atwood*
Amy Atwood